UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
FREDDY GUTIERREZ-PINTO,

                                        Plaintiff,

        - against -

ANTHONY ANNUCCI, Acting Commissioner of
Department of Corrections and Community
Supervision; ROBERT RAPPA, Superintendent of
Industry at Green Haven Correctional Facility;
DAN GARCIA, Industry Supervisor; JOHNNY
ROJAS, Correction Officer; ROBERT
BENTIVENGA, Medical Supervisor of Green
Haven Correctional Facility; and MARY
ASHONG, Nurse Practitioner/Family Health.

                                        Defendants.
---------------------------------------------------------------x

**OPINION & ORDER**

No. 20-CV-4490 (CS)

<u>Appearances</u>:

Freddy Gutierrez-Pinto
Stormville, New York
*Pro Se Plaintiff*

Jessica Acosta-Pettyjohn
Assistant Attorney General
Office of the Attorney General, State of New York
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is the motion to dismiss of Defendants Anthony Annucci, Robert

Rappa, Dan Garcia, Johnny Rojas, Robert Bentivenga, and Mary Ashong.  (ECF No. 28.)  For

the following reasons, the motion is GRANTED.

## I.      BACKGROUND

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended Complaint, (ECF No. 26 ("AC")), Initial Complaint, (ECF No. 2 ("IC")), and submission in opposition, (ECF No. 32 ("P's Opp.")).  *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *pro se* plaintiff the benefit of considering facts in original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").[1]

### A.      Factual Background

Plaintiff is incarcerated at Green Haven Correctional Facility.  On February 18, 2020, Plaintiff was working in the shipping and receiving sector of "industry," loading coffins onto a van trailer.  (AC at 3.)  Another inmate rammed a forklift into a stack of coffins, which crashed down on Plaintiff, injuring him and rendering him unconscious.  (*Id.*)[2]  Defendant Garcia, the Industry Training Supervisor, and Defendant Rojas, a correctional officer, were supposed to see "that proper industrial protocol was being use[d]" while the coffins were being loaded and stacked, but were twenty-five to thirty feet away from where the incident occurred, unaware of what was happening and allowing the inmate workers to supervise themselves.  (*Id.*; *see id.* at 2.)

---

[1] The Court will send Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

[2] Medical records from Plaintiff's hospital treatment that day state that he denied loss of consciousness and recalled all events.  (ECF No. 26-6 at 3.)  I may consider these records, and the other documents attached to the AC, on this motion.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Plaintiff alleges that on the day of his injury, safety equipment such as hard hats and gloves were not distributed to all inmate workers, the coffins were stacked on two-by-fours rather than pallets, and Garcia and Rojas "failed in their duty of observing and supervising the task of loading and securing cargo" and "assur[ing] that all machinery was used properly." (*Id*. at 4-5.)

Defendant Rappa is the Industrial Superintendent at Green Haven and Garcia's supervisor. (*Id.* at 5.) Plaintiff alleges that during his daily rounds on the day of the accident, Rappa noticed several inmates without proper safety equipment and failed to inform Garcia and Rojas that they were not properly carrying out their duties. (*Id.*) Further, Rappa "failed [to check] the listings of safety work gear that is suppose[d] to be available for all inmates at their work assignments" and "failed in his duties . . . by allowing these infractions to continue." (*Id.*)

Plaintiff was taken by ambulance to Vassar Brothers Medical Center, an outside hospital, (*id.* at 6), where a CAT scan showed "no acute traumatic injuries" and it was determined that "[n]o further trauma surgery intervention" was needed, (ECF No. 26-6 at 3). He was discharged the same day. (*Id*. at 2.) His discharge diagnosis was soft-tissue "[c]ontusion of multiple sites," for which it was recommended that he be given 650mg of Tylenol four times a day if he had pain and that he return to the hospital if he developed a severe headache, weakness in his arms or legs, or other severe symptoms. (ECF No. 26-8 at 2.) After returning to Green Haven, Defendant Ashong, a nurse practitioner, made the "medical decision" not to send Plaintiff back to the hospital or refer him to a doctor. (AC at 7.) She did not provide Plaintiff with a "bonafide medical doctor" or devices such as a walking cane or brace, because she deemed them unnecessary, and told Plaintiff instead "to walk it off, it will take care of itself." (*Id.*) After complaining of severe pain, Plaintiff was admitted to the prison hospital in late February, but Ashong refused to send him back to the outside hospital. (*Id.*) Plaintiff alleges that he went to

Case 7:20-cv-04490-CS   Document 35   Filed 02/22/22   Page 4 of 19


sick call nearly every day and was eventually told by Ashong to "stop putting in for sick call" and "if you're coming down here to complain about your pain, you can leave right now." (*Id.* at 7-8.) Six months after the incident, Ashong requested X-rays and physical therapy for Plaintiff, and after seven sessions, the therapist canceled them because Plaintiff was in such pain and the therapist felt that the therapy was doing more harm than good. (*Id.* at 8.) Ashong read the X-rays taken in August 2020 to be "normal" and also read an EMG nerve exam performed in December 2020 to be "negative." (*Id.*)

In May 2020, in response to a letter from Plaintiff, Defendant Bentivenga, the Facility Health Services Director, wrote Plaintiff a memorandum stating that his provider did not find a back brace to be medically necessary. (ECF No. 26-7 at 4.) In late June, in response to another letter from Plaintiff, Bentivenga by memorandum reviewed Plaintiff's situation and concluded, "As far as I can see you are receiving appropriate medical care, and I see no sign of 'indifference.'" (ECF No. 26-9 at 2.)

### B.  Procedural History

On June 11, 2020, Plaintiff filed a complaint in this court, alleging that Defendants Rappa, Garcia, Rojas, and Ashong treated him with deliberate indifference that constitutes cruel and unusual punishment in violation of the Eight Amendment. (IC at 4.)

On November 23, 2020, Defendants[3] filed a pre-motion letter in anticipation of their motion to dismiss, (ECF No. 17); Plaintiff responded on December 2, (ECF No. 19); and on January 6, 2021, at a pre-motion conference, I granted Plaintiff's leave to amend the Complaint, (*see* Minute Entry dated Jan. 6, 2021). Plaintiff filed the Amended Complaint on March 1, 2021,

---

[3] This pre-motion letter was on behalf of Defendants Rappa, Garcia, Rojas, and Ashong – the named Defendants at the time. (ECF No. 17.)

adding Anthony Annucci, the Acting Commissioner of the Department of Corrections and Community Supervision, and Dr. Bentivenga as Defendants.  (AC at 2.)  The instant motion followed.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

5

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

**B.   *Pro Se* Plaintiffs**

Submissions by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curium*) (cleaned up).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

**III.   DISCUSSION**

**A.   Eighth Amendment Claims**

**1.   Deliberate Indifference to Conditions of Confinement**

I first consider whether Plaintiff has adequately stated an Eighth Amendment claim for deliberate indifference to his conditions of his confinement.

> To state an Eighth Amendment claim against a prison official based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety.

*McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) (cleaned up); *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "When a prisoner asserts a claim predicated on an unsafe condition, the court must determine 'whether society considers the risk that the prisoner complains of to be so grave

that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.'"
*McCray*, 963 F.3d at 120 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)) (emphasis in
original).  "In other words, the prisoner must show that the risk of which he complains is not one
that today's society chooses to tolerate."  *Id.* (cleaned up).  The objective element depends on
both "the seriousness of the potential harm and the likelihood that such injury to health will
actually be caused."  *Helling*, 509 U.S. at 36.

a.   <u>Personal Involvement</u>

Defendants first argue that Plaintiff's AC must be dismissed because he failed to plead
facts showing the personal involvement of Defendants Annucci, Rappa, Garcia, Rojas, and
Bentivenga.  (ECF No. 29 ("Ds' Mem.") at 4-5.)  "It is well settled in this Circuit that personal
involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of
damages under § 1983."  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (cleaned up).
While *Colon* laid out a special test for supervisory liability outlining five ways a plaintiff could
show personal involvement of a supervisor, the Second Circuit recently clarified that under the
Supreme Court's ruling in *Iqbal*, the *Colon* test is invalid and "a plaintiff must plead and prove
'that each Government-official defendant, through the official's own individual actions, has
violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting
*Iqbal*, 556 U.S. at 676).  "Simply put, there's no special rule of liability for supervisors."  *Id.*
While "'[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional
provision at issue' because the elements of different constitutional violations vary," *id.* (quoting
*Iqbal*, 556 U.S. at 676) (second alteration in original), "[t]he violation must be established
against the supervisory official *directly*," *id.* (emphasis added).

7

Plaintiff has not pleaded enough for me to conclude that Defendant Annucci was personally involved in any alleged constitutional violations. Plaintiff argues that his serious injuries are evidence enough for his Eighth Amendment claim, (P's Opp. at 5-6),[4] citing *Edwards v. Quiros*, 986 F.3d 187 (2d. Cir. 2021), for the proposition that "evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk," *id*. at 194. But here Plaintiff has not set forth facts plausibly suggesting that the risk that the other inmate would plow the forklift into the stack of coffins was obvious, or even foreseeable. Nor could injury alone show that a particular defendant is responsible for the injury, as Defendants point out. (ECF No. 33 ("Ds' Reply Mem.") at 2.) Additionally, unlike in *Edwards*, where the defendant personally was aware of not only the relevant policy but also of the alleged conduct toward the plaintiff, 986 F.3d at 192-93, here Plaintiff provides no facts plausibly showing that Annucci knew anything about the coffin job or any risk posed to Plaintiff by the other inmate, or was in a position to prevent an accident like the one that occurred. Indeed, in the AC Plaintiff does not mention Defendant Annucci anywhere outside of the case caption. *See Boykin v. Moreno*, No. 17-CV-6869, 2020 WL 882195, at *3 (S.D.N.Y. Feb. 24, 2020); *King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018).

In his opposition, Plaintiff states that Defendant Annucci is liable because "it is his policies and procedure that made this incident possible. It is Acting Commissioner Annucci's policies . . . that are duly responsible for accidents that occur due to improper training, as well as inadequate supervision . . . ." (P's Opp. at 6.) This, however, is a conclusory allegation;

---

[4] Citations to Plaintiff's opposition refer to the page numbers generated by the Court's Electronic Case Filing ("ECF") System.

8

Plaintiff fails to describe an actual policy of Annucci's that could be construed as evidence of his individual action. And obviously Annucci cannot be deliberately indifferent to events of which he is unaware. It is plain that Annucci is being sued merely based on his supervisory position, which even before *Tangreti* would not suffice to show personal involvement for purposes under § 1983. *See, e.g.*, *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2004) ("Where a defendant is a supervisory official, a mere linkage to the unlawful conduct through the chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.") (cleaned up).

Accordingly, the Eighth Amendment claim against Annucci is dismissed.

With respect to Rappa, Garcia, and Rojas, Plaintiff pleads that they were on the site where he was injured and failed to prevent the injury, so I analyze whether the personal involvement pleaded suffices to state an Eight Amendment claim.

b.    Analysis

In *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987), the Second Circuit held that a *pro se* prisoner stated a claim by alleging that a prison official ordered him to continue working on a ladder he had told the official was unsafe. The court held that such an order "'involve[s] more than ordinary lack of due care for the prisoner's interests or safety.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). After *Gill*, courts in this Circuit have found that significant injuries caused by hazardous prison workplace conditions can satisfy the objective element of an Eighth Amendment inquiry. *See, e.g.*, *Kenyon v. Weber*, No. 16-CV-6510, 2017 WL 1078620, at *4 (W.D.N.Y. Mar. 20, 2017); *Walker v. Vargas*, No. 11-CV-9034, 2013 WL 4792765, at *7 (S.D.N.Y. Aug. 26, 2013); *Baumann v. Walsh*, 36 F. Supp. 2d 508, 513-14 (N.D.N.Y. 1999).

9

But here Plaintiff fails to allege a hazardous workplace condition or other sufficiently serious deprivation under the objective prong. While I assume that Plaintiff's injuries were serious, they arose from an unforeseen and unforeseeable accident, where another inmate rammed a forklift into a stack of coffins, which then crashed down onto Plaintiff. (AC at 3.) The incident was not due to ongoing unsafe or hazardous physical conditions in the prison, but rather was a one-off, unintentional misfortune. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain."). "[T]o succeed in establishing a constitutional deprivation in a setting such as that now presented the plaintiff must prove additional facts such as a history of accidents or a previous request for repairs that had fallen on deaf ears." *Monroe v. Mullen*, No. 06-CV-144, 2007 WL 2874435, at *5 (N.D.N.Y Sept. 27, 2007) (cleaned up).

Courts in this Circuit routinely find that an accident, even if arising from a risky condition, does not rise to the level of a sufficiently serious deprivation. *See, e.g.*, *Martin v. City of N.Y.*, No. 11-CV-600, 2012 WL 1392648, at *10 (S.D.N.Y. Apr. 12, 2012) ("Courts in this Circuit agree that bodily injuries sustained from a slip-and-fall on a wet floor simply do not rise to the level of a constitutional violation."); *Harris v. N.C.P. Dep't., Detective Div*., No. 06-CV-5586, 2007 WL 1540232, at *2 (E.D.N.Y. May 24, 2007) (distinguishing "isolated instances of negligence that cause unintended injury" from repeated accidents where "nothing was done after [the first accident] to prevent similar accidents"); *Hylton v. Fed. Bureau of Prisons*, No. 00-CV-5747, 2002 WL 720605, at *3 (E.D.N.Y. Mar. 11, 2002) ("To meet this high objective standard, [the defendant] must plead more than the fact that he was injured in [an] accident. He must plead circumstances – for example, recurring serious injuries to prisoners . . . – sufficient to

support an inference that the challenged conditions were so obviously hazardous as to constitute cruel and unusual punishment."). Here, Plaintiff has not pleaded any facts suggesting that Defendants had any reason to expect the other inmate to drive the forklift carelessly. Nor has he plausibly alleged facts that would distinguish his situation from that of any worker who faces the risk that a coworker might operate machinery dangerously. *See McCray*, 963 F.3d at 120 ("[Plaintiff's] Complaint did not make any claims of exceptional circumstances that would elevate the Green Haven yard conditions beyond the typical level of danger presented by a slippery sidewalk or a wet floor."). Plaintiff's allegations do not amount to a denial of "the minimal civilized measure of life's necessities" or a violation of "contemporary standards of decency." *Id.* at 117, 120.

Even if Plaintiff somehow satisfied the objective prong, the same reasoning would dictate that he also fails to satisfy the subjective prong, as no Defendant acted with deliberate indifference toward Plaintiff's health or safety. The subjective prong requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Tangreti*, 983 F.3d at 619. This requires "more than mere negligence"; instead, "the prison official must know of, and disregard, an excessive risk to inmate health and safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (cleaned up). Without reason to believe that the other inmate would drive the forklift into the stack of coffins, or that Defendants had the ability to stop it, the conduct of Rappa, Garcia, and Rojas cannot be said to rise to that level. Indeed, Plaintiff himself characterizes their behavior as "negligent," (AC at 5), but "mere negligence will not suffice" to show deliberate indifference, *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see Cotto v. Dee 1-5*, No. 18-CV-2130, 2018 WL 10140180, at *2 (S.D.N.Y. Apr. 17,

2018) ("The negligence of a correction official is not a basis for a claim of a federal constitutional deprivation under § 1983.").

Plaintiff alleges that Defendants Garcia and Rojas stood twenty-five to thirty feet away from where the incident occurred and did not distribute safety equipment, and that Rappa did not tell them to do otherwise.  (AC. at 3-5.)  But this does not demonstrate prior knowledge of or deliberate indifference to a hazardous condition.  Plaintiff does not allege that the forklift operator had any history of negligence; that any of these Defendants could have controlled the forklift if they stood more closely; that they knew the way the coffins were stacked was dangerous; or that the coffins falling would have been prevented, or would not have caused his contusions, if he had had goggles, gloves, or a hard hat.  There are simply no facts in the Amended Complaint from which to plausibly infer that Rappa, Garcia, and Rojas were in possession of facts suggesting that Plaintiff's work assignment put him at substantial risk of serious harm, let alone that they drew the inference that he was at such risk and nevertheless failed to act.  *See Farmer*, 511 U.S. at 837, 847.

Accordingly, Plaintiff's Eighth Amendment claim for deliberate indifference to the conditions of his confinement against Defendants Rappa, Garcia, and Rojas is dismissed.

## 2.      Deliberate Indifference to Medical Needs

Next, I address whether Plaintiff has adequately stated a claim for deliberate indifference to his medical needs.  The Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care.  *See id.* at 832.  "Yet not every lapse in medical care is a constitutional wrong.  Rather, a prison official violates the Eighth Amendment only when two requirements" – one objective and one subjective – "are met."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (cleaned up).

The objective element requires "the alleged deprivation of adequate medical care must be sufficiently serious." *Id.* (cleaned up). Under this element of the test, I must determine (a) "whether the prisoner was actually deprived of adequate medical care" and (b) if so, "whether the inadequacy in medical care is sufficiently serious." *Id.* at 279-80. Prison officials are required to provide "reasonable care." *Id*. at 279 (*citing Farmer*, 511 U.S. at 844-47). "Because prison officials' duty is only to provide reasonable care, prison officials are liable only if they fail to take reasonable measures in response to a medical condition." *Rutherford v. Correct Care Sols.*, *LLC*, No. 18-CV-12049, 2020 WL 550701, at *5 (S.D.N.Y. Feb. 4, 2020) (cleaned up).

The subjective component requires a plaintiff to plausibly allege that the official acted with deliberate indifference to the inmate's health. *Salahuddin*, 467 F.3d at 280. "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* "The defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere." *Id.* at 281.

"[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." *Estelle*, 429 U.S. at 105. While deliberate indifference is not established merely because a provider concludes "no 'medical treatment' [is] necessary," *Jordan v. Fischer*, 773 F. Supp. 2d 255, 276-77 (N.D.N.Y. 2011), the personnel in question must actually evaluate the patient's condition and make a determination, *see Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *4 (S.D.N.Y. Sept. 30, 2017) (plaintiff who alleged he complained of chest pains and was sent back to his cell without examination or treatment before having a heart attack had pleaded

deliberate indifference); *Gilliam v. Hamula*, No. 06-CV-6351, 2011 WL 6148943, at *16

(W.D.N.Y. Dec. 12, 2011) (alleged refusal to examine Plaintiff could support finding of

deliberate indifference); *cf. Powell v. Cusimano*, 326 F. Supp. 2d 322, 338-39 (D. Conn. 2004)

(plaintiff was not denied medical care because evidence clearly showed he was in fact examined

by a nurse).

a.    Personal Involvement

Defendant Bentivenga argues that Plaintiff has not sufficiently alleged his personal

involvement.  (Ds' Mem. at 4; Ds' Reply at 2.)  It is true that most of the medical allegations in

the AC relate to Nurse Ashong, but Plaintiff attaches two memoranda in which Bentivenga

reviews and approves of Ashong's treatment.  If Ashong's treatment violated the Eighth

Amendment and Bentivenga reviewed that care as part of his duties, knew it was

unconstitutional, and did nothing about it, that could constitute sufficient deliberate indifference

and personal involvement on his part.  Accordingly, I analyze whether an underlying violation

exists.

b.    Analysis

The objective element "contemplates a condition of urgency that may result in

degeneration or extreme pain."  *Chance*, 143 F.3d at 702 (cleaned up).  "Factors that have been

considered include the existence of an injury that a reasonable doctor or patient would find

important and worthy of comment or treatment; the presence of a medical condition that

significantly affects an individual's daily activities; or the existence of chronic and substantial

pain."  *Id.* (cleaned up).  Although it does not appear that soft-tissue contusions would be the sort

of injury that would require any long-term treatment, Plaintiff alleges that his injuries make it

difficult for him to walk and that he is in excruciating pain.  (AC at 7.)  Taking those allegations

as true, as I must at this stage, I will assume that he sufficiently alleges a serious deprivation.

But he has not met the subjective test.  Plaintiff takes issue with not seeing a "bonafide

medical doctor," not getting a brace or cane, not being examined by a specialist, Ashong

assessing his X-ray and nerve test results as normal, and not getting adequate pain medication.

(AC at 7; P's Opp. at 6, 12.)  But his allegations show that he was seeing Ashong regularly and

that she ordered tests and therapy.  (AC at 7-8; ECF No. 26-7 at 4; ECF No. 26-9 at 2.)  His

claim amounts to a disagreement over the proper course of treatment, which does not give rise to

a constitutional violation.  *See Chance*, 143 F.3d at 703 ("It is well-established that mere

disagreement over the proper treatment does not create a constitutional claim.").  It is well settled

that

> disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms
> of treatment, or the need for specialists or the timing of their intervention, are not
> adequate grounds for a Section 1983 claim.  These issues implicate medical judgment
> and, at worst, negligence amounting to medical malpractice, but not the Eighth
> Amendment.

*Sonds v. St. Barnabas Hosp. Corr. Health Servs*., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see*

*Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Rutherford*, 2020 WL 550701, at *6.

Accordingly, complaints alleging inadequate pain medication and disagreement with the course

of treatment, like this one, are routinely dismissed in this Circuit, at least where some medical

assessment is done.  *See, e.g*., *Jacks v. Annucci*, No. 18-CV-3291, 2019 WL 3239256, at *4

(S.D.N.Y. July 18, 2019) (collecting cases); *Washington v. Westchester Cnty. Dep't of*

*Correction*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-

settled that the ultimate decision of whether or not to administer a treatment or medication is a

medical judgment that, without more, does not amount to deliberate indifference.").

Even if Defendant Ashong incorrectly assessed Plaintiff's condition, misread the scans, or should have provided additional treatment, this conduct would amount to nothing more than negligence or medical malpractice, and "[h]arm to a prisoner caused by accident, negligence or medical malpractice do not alone constitute the necessary deliberate indifference." *Hogan v. Russ*, 890 F. Supp. 146, 149 (N.D.N.Y. 1995). Plaintiff presents no facts plausibly suggesting that Ashong (or Bentivenga) believed that Plaintiff's care was inadequate but chose to do nothing. Plaintiff alleges that Ashong accused Plaintiff of lying about his pain, (P's Opp. at 6), but does not suggest that she did not believe that to be true. To the contrary, he alleges that she "believes Plaintiff is 'faking his injury.'" (*Id.* at 7.) Whether that belief is right or wrong, it does not amount to deliberate indifference. *See Salahuddin*, 467 F.3d at 281; *see also McClinton v. Connolly*, No. 13-CV-2375, 2014 WL 5020593, at *5 (S.D.N.Y. Oct. 8, 2014) ("[A]ccording to Plaintiff, Officers Lynch and Smith stated that they believed Plaintiff 'was faking an asthma attack.' If the officers believed Plaintiff's asthma attack was a mere ruse, they could not have been aware of a substantial risk that Plaintiff would suffer serious harm.") (cleaned up); *Hamilton v. Fisher*, No. 10-CV-1066, 2012 WL 987374, at *7 (N.D.N.Y. Feb. 29, 2012) ("[D]ischarging Plaintiff – after a lengthy hospital stay – under the suspicion that Plaintiff faked a suicide attempt in order to be removed from SHU might be considered negligent conduct under certain circumstances, but that finding, at best, is not sufficient to state an Eighth Amendment claim.") (cleaned up), *report and recommendation adopted*, 2012 WL 987122 (N.D.N.Y. Mar. 22, 2012).[5]

---

[5] In his opposition, Plaintiff describes events occurring in 2021 that he alleges constitute continued deliberate indifference. (*Id.* at 4, 11-12, 18, 20.) These allegations are not in the AC and Plaintiff never sought or obtained permission to amend to add them. In any event, they are of the same ilk as the pleaded facts and would not change the outcome.

Accordingly, Plaintiff's Eighth Amendment claim against Ashong and Bentivenga for deliberate indifference to medical needs is dismissed.[6]

### B.    Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint, (*see* AC), after having the benefit of a pre-motion letter from Defendants outlining the proposed grounds for dismissal, (ECF No. 17), and the discussion at the January 6, 2021 pre-motion conference, (Minute Entry dated Jan. 6, 2021). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380

---

[6] As I do not find that Plaintiff has plausibly pleaded that Defendants displayed deliberate indifference to his conditions of confinement or medical needs, I need not address Defendants' argument that they are entitled to dismissal on qualified immunity grounds.

F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion.[7]  Accordingly, the Court declines to grant leave to amend *sua sponte.  See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

---

[7] Further, at least some of "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them]."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' motion is GRANTED.  The Clerk of Court is respectfully directed to send a copy of this Opinion and Order to Plaintiff, terminate the pending motion, (ECF No. 28), and close the case.


**SO ORDERED.**

Dated: February 22, 2022
           White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.